Daniel J. Herling (SBN 103711)
djherling@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Telephone: 415 432 6000
Facsimile: 415 432 6001

Nicole V. Ozeran (SBN 302321)
nvozeran@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
2029 Century Park East, 31st Floor
Los Angeles, CA 90067
Tel: (310) 586-3200
Fax: (310) 586-3202

Attorneys for Defendant,
HARBOR FREIGHT TOOLS USA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| WILL KAUPELIS AND FRANK ORTEGA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br><br>Plaintiffs,<br><br>vs.<br><br>HARBOR FREIGHT TOOLS USA, INC.,<br><br>Defendant. | Case No. 8:19-cv-1203-JVS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER TO PRESERVE CONFIDENTIALITY DESIGNATIONS**<br><br>Date: June 1, 2020<br>Time: 1:30 p.m.<br>Ctrm.: 10C<br>Judge: Hon. James V. Selna<br><br>Complaint Filed: June 17, 2019<br>Trial Date: November 10, 2020 |

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER TO PRESERVE CONFIDENTIALITY DESIGNATIONS

## I. INTRODUCTION

Defendant Harbor Freight Tools USA, Inc. ("HFT") brings this Motion for a Protective Order to prevent Plaintiffs Will Kaupelis and Frank Ortega ("Plaintiffs") from abusing the provisions of the Protective Order previously entered in this action (Dkt. No. 17) and causing the unwarranted public disclosure of HFT's confidential business documents.

Despite HFT's attempt to resolve this matter informally, Plaintiffs have failed to engage in a meaningful meet and confer process: Plaintiffs have refused to substantively respond to HFT's correspondence concerning Plaintiffs' challenges to HFT's confidentiality designations challenges and instead have vowed to publicly disclose 40 confidential documents based solely on Plaintiffs' counsel's interpretation of Section 6.3 of the Parties' Stipulated Protective Order, which sets forth the circumstances when a Designating Party is required to affirmatively move the Court to preserve designations that have been challenged by the Non-Designating Party.

Plaintiffs' counsel's interpretation of this provision – that confidentiality designations are automatically waived 21 days after they are formally challenged, regardless of how far the Parties have come in the meet and confer process – is wrong. *See* Dkt. No. 17, Section 6.3. As a court construing a nearly identical provision explained, "[t]he confidentiality designation challenge process set forth in Section 6 of the Stipulated Protective Order is meant to provide a mechanism whereby the parties meet and confer to resolve disputes over confidentiality designations and seek court intervention if necessary. *It is not meant as a mechanism whereby a party waives the confidentiality designation of documents by engaging in the meet and confer process*." *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, Case No. 12-CV-2582-CW (JSC) 2013 U.S. Dist. LEXIS 25642, *5 (N.D. Cal. Feb 25, 2013) (emphasis added).

Plaintiffs' counsel's attempt to override the meet and confer process serves no legitimate litigation objective. Rather, its only purpose appears to be to require HFT to incur unnecessary expense in preparing the instant Motion. Plaintiffs' attempt to disclose confidential documents is premature and improper.

Accordingly, the Court should grant HFT's Motion for a Protective Order.

## II.  BACKGROUND

On March 30, 2020, Plaintiffs' counsel notified HFT via email that it disputed the confidentiality designations applied by HFT to 43 documents. *See* Sazer Decl. Ex. A. Plaintiffs' counsel raised only the conclusory objection that the "documents do not disclose confidential trade secrets or contain information that would otherwise be protected under [the Ninth Circuit's] 'compelling reasons' standard [for filing documents under seal]." The disputed documents included 27 documents designated as "Highly Confidential," 14 documents designated as "Confidential," and 2 documents without a confidentiality designation.[1] *See* Sazer Decl. ¶ 5.

HFT and Plaintiffs' counsel held a meet and confer call on April 9, during which HFT explained that it would be revising more than half of the challenged confidentiality designations. *See id.* Later that same day, HFT sent Plaintiffs' counsel an email detailing HFT's position on each of the challenged documents: HFT would agree to modify the "Highly Confidential" designation to a "Confidential" designation for 27 challenged documents and to remove the "Confidential" designation from 1 of the challenged documents. *See* Sazer Decl. Ex. A. HFT further stated its position that "the rest of the documents identified in [Plaintiffs' counsel's] initial list received proper designations." *Id.*

---

[1] HFT assumes that Plaintiffs' counsel included the latter 2 documents in their March 30 email by mistake.

3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION FOR PROTECTIVE ORDER TO PRESERVE CONFIDENTIALITY DESIGNATIONS

Plaintiffs' counsel never responded to HFT's email. Instead, on April 10, Plaintiffs' counsel replied to the same email chain but only to challenge 78 entries *in HFT's privilege log* –Plaintiffs' counsel made no mention of HFT's proposed revised confidentiality designations. *See id.*

On April 13, Plaintiffs' counsel asked when HFT would be re-producing the documents that it had agreed to re-produce with different confidentiality designations. *See id.* Despite simultaneously working to investigate the privilege log challenges raised by Plaintiffs' counsel, HFT promised in response to "prioritize re-production of the documents with new confidentiality designations" and that such re-production was forthcoming. *Id.*

Plaintiffs' counsel's next email came at 5:48 p.m. on Friday, April 17. For the first time, Plaintiffs' counsel declared that:

> Pursuant to Section 6.3 of our Protective Order, the documents that we challenged will be automatically de-designated as of April 21, 2020, given that you have not filed any motion to retain confidentiality. After the 21st, these documents will no longer be treated as confidential. We will therefore seek to file these documents publicly in our reply brief and use them as trial exhibits.

*Id.* In response, HFT reminded Plaintiffs that HFT had already agreed "to re-produce, with reduced or no confidentiality designations, a number of documents that Plaintiffs' counsel challenged," and that HFT "provided [Plaintiffs' counsel] with a list of these documents." *Id.* HFT further noted that "[g]iven the significant extensions to the case deadlines, including the deadline for [Plaintiffs'] Reply to Class Certification, [HFT] fail[s] to see the need for the arbitrary April 21 deadline. [HFT] intends to provide an updated privilege log and reproduce documents shortly and all documents should remain treated as confidential until that time." *Id.* Plaintiffs' counsel replied only that "[p]er Section 6.3 of the Protective Order, we will continue to treat all previously challenged documents as confidential until

midnight tomorrow, at which time, by operation of the protective order, the designation automatically lifts in the absence of a motion by Defendant." *Id.*

After HFT reminded Plaintiffs' counsel that their Reply was not due until July 31, 2020, Plaintiffs' counsel agreed to a one week-extension of the arbitrary April 21, 2020 deadline; they did not, however, abandon their demand that HFT file a motion to preserve the documents' confidentiality designations. *See id.*

In a final attempt to avoid burdening the Court with this Motion, on April 28, 2020, at 12:04 p.m., HFT produced to Plaintiffs re-designated versions of the 28 documents that it previously promised to re-designate. *See id.* ¶ 12. HFT asked Plaintiffs' counsel to advise HFT by 4:00 p.m. if they nevertheless still intended to treat all 43 challenged documents as non-confidential in the absence of this Motion. *See id.* At 2:33 p.m., Plaintiffs' counsel withdrew its challenges to 12 documents but responded that "Plaintiffs are standing by their challenges to the confidentiality designations to the [31] documents listed below." *Id.*

### III. ARGUMENT

#### A. Plaintiffs Are Wrong That Section 6.3 of The Protective Order Requires HFT to File This Motion to Preserve The Confidentiality Designations at Issue

Contrary to Plaintiffs' position, Section 6.3 of the Protective Order does not dictate that, in the absence of a motion filed by the Designating Party, documents automatically lose their confidentiality designations 21 days after the Non-Designating party raises a challenge to those documents. Rather, Section 6.3 must be read in light of Section 6.2, which sets forth the meet and confer process the parties must follow before seeking judicial intervention. *See* Dkt. No. 17. Section 6.2 requires the parties to "attempt to resolve each challenge in good faith," and further provides that, "[i]n conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the

Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation." *Id.* Section 6.2 also instructs that the "Challenging Party may proceed to the next stage of the challenge process *only* if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner." *Id.* (emphasis added).

Plaintiffs, however, focus only on Section 6.3, which reads as follows:

> If the Parties cannot resolve a challenge without court intervention, the Designating Party shall file and serve a motion to retain confidentiality under Civil Local Rule 7 . . . within 21 days of the initial notice of challenge or within 14 days of the parties agreeing that the meet and confer process will not resolve their dispute, whichever is earlier. . . . Failure by the Designating Party to make such a motion . . . shall automatically waive the confidentiality designation for each challenged designation.

*Id.* Plaintiffs interpret this provision to mean that within 21 days of receiving a challenge to certain documents' confidentiality designations, the other party must file a motion with the Court to preserve their designations or automatically waive confidentiality – regardless of any progress made by the parties during the meet-and-confer process, including whether the party has already agreed to re-produce (or even already re-produced) many of the documents at issue.

Plaintiffs arrive at this conclusion only by ignoring Section 6.2, which strongly encourages the parties to resolve confidentiality disputes through the meet and confer process. Read in tandem, Sections 6.2 and 6.3 authorize the parties to resort to motion practice only once both sides have thoroughly articulated their positions and nevertheless remain at an impasse. These Sections do not permit Plaintiffs' counsel to raise a conclusory challenge to 43 different documents' designations, receive HFT's agreement to modify a number of the challenged designations, and raise no objection to the terms of HFT's proposal – only to later inform HFT of their intention to treat all 43 documents as non-confidential unless HFT files a motion within two

court days. Indeed, Section 6.3 seeks to guard against exactly this sort of gamesmanship, warning both parties that "[f]rivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions." *Id.*

In fact, the court rejected Plaintiffs' counsel's exact position in *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 2013 U.S. Dist. LEXIS 25642, which addressed a nearly identical provision in a stipulated protective order. There, the plaintiff raised a blanket challenge to multiple confidentiality designations. The defendant responded by agreeing to remove or modify the designations from a significant portion of the challenged documents. *See id.* at *3-4. The parties proceeded to meet and confer on the issue. The plaintiff then abruptly announced that the defendant "had waived the confidentiality of [all] of the documents identified in the [the plaintiff's initial challenge] by failing to file a [timely] brief with the Court seeking to retain the confidentiality of the documents." *Id.* at *4-5. As Plaintiffs' counsel does here, the *Ubiquity* plaintiff relied on the section of the parties' stipulated protective order providing that "[i]f the Parties cannot resolve a challenge without court intervention, the Designating Party shall file and serve a motion to retain confidentiality . . . within 21 days of the initial notice of challenge . . . . Failure by the Designating Party to make such a motion shall automatically waive the confidentiality designation for each challenged designation." Sazer Decl. Ex. B.

The court disagreed with the plaintiff. Judge Jacqueline Scott Corley held that "the confidentiality designation challenge process set forth in Section 6 of the Stipulated Protective Order is meant to provide a mechanism whereby the parties meet and confer to resolve disputes over confidentiality designations and seek court intervention if necessary. It is not meant as a mechanism whereby a party waives the confidentiality designation of documents by engaging in the meet and confer process." *Ubiquiti*, 2013 U.S. Dist. LEXIS 25642, at *5. Thus, where "the parties'

correspondence reflects an effort to meet and confer to resolve the disputes over confidentiality designations," and where the designating party "believed this process was ongoing such that it would not have made sense to move to retain the confidentiality of documents [while] the parties were attempting to work it out," failure by the designating party to file a motion within 21 days of the initial challenge does not constitute a waiver. *Id.* at *5-6; *see also id.* at *6 ("Plaintiff's waiver argument is not well taken as it places the form (the specific dates set forth in the agreement) over the substance (a mechanism by which the parties attempt to resolve confidentiality designations)."). As the *Ubiquiti* court explained, "Section 6 of the Stipulated Protective Order is meant to ensure that the parties meet and confer in good faith prior to bringing a dispute to the Court." *Id.* at *7.

Indeed, Plaintiffs' counsel's position is even less tenable than the *Ubiquiti* plaintiff's given that Plaintiffs' counsel failed to even object to HFT's April 9, 2020 proposal. HFT therefore reasonably believed that the proposal resolved the parties' dispute. Plaintiffs' counsel improperly invoked Section 6.3 and HFT should not be required to file the instant Motion to preserve the confidentiality designations at issue. Nonetheless, in an abundance of caution, HFT addresses the merits of the designations below.

### B. HFT's Revised Confidentiality Designations Are Proper

As an initial matter, Plaintiffs' counsel's March 30 email improperly conflates the standard for sealing a document with the standard for designating a document as Confidential under the Protective Order. The two standards are not the same: The former requires "compelling reasons," such as the possible disclosure of trade secrets or similarly sensitive information. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006). The latter, in contrast, is satisfied by any "information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c)." Dkt.

No. 17, Section 2.2.  Rule 26(c), in turn, extends its protections to "trade secret *or other* confidential research, development, or commercial information."  FED. R. CIV. PROC. 26(c)(1)(G) (emphasis added); *see also Kamakana*, 447 F.3d at 1180 (distinguishing between the "compelling reasons" standard and Rule 26(c)'s more "flexib[le]" "good cause" standard).  Accordingly, the Court need not resolve whether any of the documents at issue satisfy the "compelling reasons" standard until it is presented with a motion to seal the documents in connection with a "dispositive" filing.  *Kamakana*, 447 F.3d at 1180.

Of the 43 designations challenged by Plaintiffs' counsel, HFT already changed 1 designation from Confidential to non-Confidential, and 27 designations from Highly Confidential to Confidential.  HFT maintains only that the 13 remaining documents were properly designated as Confidential, and that the 27 documents designated as Highly Confidential should retain a "Confidential" designation.

These documents each fall into one of three categories: (1) market or financial analysis performed by HFT; (2) customer reviews aggregated and collected by HFT; and (3) communications relating to HFT's responses to product concerns raised by third-parties.[2]  *See* Cugini Decl. ¶ 3.  All of these categories constitute "research" or "commercial information" that HFT considers to be and treats as confidential.  *See* FED. R. CIV. PROC. 26(c)(1)(G); Cugini Decl. ¶ 3.  Indeed, at no point have Plaintiffs even attempted to argue that these documents do not satisfy Rule 26(c).  *See generally* Sazer Decl. Ex. A.

Thus, the Court should find that all of the documents at issue, except for the 1 document that HFT has already agreed to re-produce as non-confidential (and the 2

---

[2] The 31 documents for which Plaintiffs indicated that they continue to stand by their objections as of April 28 likewise consist of the same three subject-matter categories.

documents identified by Plaintiffs' counsel that were not originally produced as Confidential) were properly designated as "Confidential" under the terms of the Protective Order.[3]

## IV. CONCLUSION

Plaintiffs' counsel raised a blanket, conclusory objection to HFT's designation of 43 documents. HFT thereafter agreed to change the designations of 27 documents from "Highly Confidential" to "Confidential" and to remove the "Confidential" designation from 1 document. HFT also stated that the 13 remaining documents were properly originally designated as "Confidential." Plaintiffs' counsel never objected to HFT's proposal. Instead, Plaintiffs' counsel intentionally ran out the clock under Section 6.3 of the Protective Order in order to force HFT to file the instant Motion. Such gamesmanship is inappropriate and should not be condoned by this Court.

Accordingly, HFT requests that the Court grant HFT's Motion for a Protective Order and order Plaintiffs to continue to treat the 40 documents at-issue as Confidential.

Dated: April 28, 2020                          Respectfully submitted,

                                               MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.

                                               /s/Nicole V. Ozeran
                                                  Daniel J. Herling
                                                  Nicole V. Ozeran
                                                  Attorneys for Defendants
                                                  HARBOR FREIGHT TOOLS USA INC.

---

[3] HFT has not attached the 43 documents originally challenged by Plaintiffs' counsel as exhibits to this Motion, both to avoid burdening the Court with an excessive number of documents and to obviate the need for the Court to rule on a premature Motion to Seal these documents. At the Court's request, however, HFT can make the challenged documents available for *in-camera* review.