Daniel J. Herling (SBN 103711)
djherling@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Telephone:  415 432 6000
Facsimile:   415 432 6001

Nicole V. Ozeran (SBN 302321)
nvozeran@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
2029 Century Park East, 31st Floor
Los Angeles, CA 90067
Tel:  (310) 586-3200
Fax: (310) 586-3202

Attorneys for Defendant,
HARBOR FREIGHT TOOLS USA, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| WILL KAUPELIS AND FRANK ORTEGA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br><br>Plaintiffs,<br><br>vs.<br><br>HARBOR FREIGHT TOOLS USA, INC. ,<br><br>Defendant. | Case No. 8:19-cv-1203-JVS<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER TO PRESERVE CONFIDENTIALITY DESIGNATIONS**<br><br>Date:    June 1, 2020<br>Time:   1:30 p.m.<br>Ctrm.:  10C<br>Judge:  Hon. James V. Selna<br><br>Complaint Filed:   June 17, 2019<br>Trial Date:           November 10, 2020 |

## I.     INTRODUCTION

The 30 documents still at issue were properly designated by Defendant Harbor Freight Tools USA, Inc. ("HFT") as Confidential under the Stipulated Protective Order ("Protective Order") governing this action.  As Plaintiffs' counsel knows – and likely intends – public disclosure of only a cherry-picked collection of customer complaints and negative reviews concerning a product that has already been recalled and replaced would serve no purpose other than to embarrass HFT and harm its business operations.  Because such disclosure would jeopardize HFT's "competitive standing," good cause supports HFT's designation of these documents as Confidential.  *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978).

Moreover, none of the arguments appearing in Plaintiffs' Opposition in support of de-designation were raised by Plaintiffs during the meet and confer process.  Indeed, the background facts in HFT's Motion that Plaintiffs' counsel characterizes as "misleading spin" are simply a straightforward account of the meet and confer process that Plaintiffs' counsel short-circuited.  Plaintiffs have not brought their own motion asking the Court to de-designate the documents at issue, as they are required to do under Section 6.3 of the Protective Order; instead, Plaintiffs' counsel threatened to unilaterally treat the at-issue documents as non-Confidential unless HFT filed a motion for a Protective Order.

Now, for the first time in their Opposition, Plaintiffs argue that documents relating to customer complaints and reviews are effectively already public and, therefore, cannot be confidential documents.  But even if some customer reviews are available online, this does not mean that the reviews are available in the format or manner in which they are internally maintained by HFT.  Furthermore, HFT's internal correspondence about reviews and complaints is not public.

The documents at issue aggregate information in a manner that is not available to the public, reflect HFT's internal deliberations regarding product complaints, and

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER TO
PRESERVE CONFIDENTIALITY DESIGNATIONS

1   paint an unrepresentative picture of HFT's customers' satisfaction that could be used

2   by HFT's competitors to adversely impact HFT.  Accordingly, the Court should grant

3   HFT's Motion for Protective Order and order that HFT's 30 at-issue documents

4   continue to be treated as Confidential.

5   **II.   ARGUMENT**

6       **A.    The 30 Documents Still at Issue Were Properly Designated as
            Confidential**

7

8       After citing the wrong legal standard in their original March 30, 2020

9   correspondence, Plaintiffs now concede that HFT must only establish "good cause,"

10  as defined by Federal Rule of Civil Procedure 26(c), to designate a document as

11  Confidential.  *See* Opp., Dkt. No. 48 at 4:1-3.  Rule 26(c), in turn, extends its

12  protections not only to "trade secret[s]," but also to "other confidential research,

13  development, or commercial information."  FED. R. CIV. PROC. 26(c)(1)(G).  Because

14  disclosure of the documents at issue would be "detrimental to [HFT's] competitive

15  interests," that standard is satisfied here.  *Herron v. Best Buy Stores, LP*, Case No.

16  2:12-cv-02103, 2015 U.S. Dist. LEXIS 120865, *9 (E.D. Cal. Sept. 10, 2015); *see*

17  *also Nixon*, 435 U.S. at 598 (recognizing court's power to seal "sources of business

18  information that might harm a litigant's competitive standing").

19      The first category of documents discussed by Plaintiffs' consists of documents

20  selected from HFT's compilation of customer product reviews.  *See* Smith Decl.,

21  Dkt. No. 46-2, Exs. 7, 10, 12-13, 15-16, 18-20, 22, 24, 27.  As part of its efforts to

22  ensure product safety and customer satisfaction, HFT receives notifications of

23  negative online reviews of its products.  *See* Cugini Decl. ¶ 3.  This business practice

24  helps HFT keep abreast of customer satisfaction concerns and potential safety issues

25  and, when necessary, take corrective action.  *See id.*  HFT's internal compilation of

26  these reviews, however, is not available to the public.  *See id.*

27      Public disclosure of this internal collection of only certain reviews, as

28

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER TO
PRESERVE CONFIDENTIALITY DESIGNATIONS

maintained by HFT, would create a false impression that HFT's reviews are uniformly negative.  There is a risk that HFT's competitors will use that collection of negative reviews – which Plaintiffs intend to post on the public docket in this case– in order to undermine HFT's reputation and divert business away from HFT.  *See id.* ¶ 4.  Courts within the Ninth Circuit routinely order documents to be sealed for exactly this reason.  *See, e.g.*, *Herron*, 2015 U.S. Dist. LEXIS 120865, *9 (holding that "business information [whose] public disclosure . . . could be detrimental to [a litigant's] competitive interests" is sealable under the "good cause" standard and even under the more demanding "compelling reasons standard"); *Gonzales v. Comcast Corp.*, Case No. 1:10-cv-01010, 2011 U.S. Dist. LEXIS 116482, *8-9 (E.D. Cal. Oct. 7, 2011) (sealing documents reflecting customer complaints because, if publicly disclosed, Comcast's competitors could "exploit these complaints, which might have serious business consequences for Comcast"); *Bohannon v. Facebook, Inc.*, Case No. 12-cv-018942014, U.S. Dist. LEXIS 156250, *10 (N.D. Cal. Nov. 3, 2014) (sealing information derived from a marketing survey regarding user satisfaction, in addition to documents reflecting Facebook employees' discussions and analysis thereof).

Disclosure of these documents would also provide HFT's competitors extensive consumer feedback on HFT's products without incurring the expense of actually collecting this information, whereas HFT has invested resources to monitor its reviews.[1]  *See id.*  Furthermore, requiring HFT to disclose reviews compiled by

---

[1] In fact, courts have held that a private company's compilations of otherwise-public information constitute trade secrets, which are expressly covered by Rule 26(c).  *See, e.g.*, *ReadyLink Healthcare v. Cotton*, 126 Cal. App. 4th 1006, 1019-20 (2005) (holding that a customer list reflecting public information qualified as a trade secret because it was "procured by substantial time, effort, and expense").  California's version of the United Trades Secret Act defines "trade secret" as "information,

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER TO
PRESERVE CONFIDENTIALITY DESIGNATIONS

HFT whenever it is engaged in product liability litigation would substantially discourage collection and review of this information, and would consequently leave companies less informed and less able to correct potential safety issues. *See id.*

The second category discussed by Plaintiffs consists of communications from customers (*see* Smith Decl. Exs. 3, 6, 8, 11, 21, 23, 28-30) and one communication with the Consumer Product Safety Commission ("CPSC"). *Id.*, Ex. 25. None of these communications are available online. Moreover, like the documents in the first category, the documents in this category could be exploited by HFT's competitors if they were publicly disclosed. *See* Cugini Decl. ¶ 5. It is in the public's best interest to encourage HFT to communicate directly with customers and the CPSC regarding product complaints, yet HFT would be discouraged from doing so if it were not permitted to keep these communications confidential in subsequent litigation. *See id.*

The third category consists of internal HFT emails discussing HFT's response to customer complaints. *See* Smith Decl. Exs. 1-2, 4-5, 9, 14, 17, 26. Again, because these documents reflect complaints, their disclosure could be used by HFT's competitors seeking to disparage HFT and disrupt HFT's customer relationships. *See id.* ¶ 6. When HFT responds to a customer complaint, it must balance several competing interests, including resolving the individual customer's concerns, promoting satisfaction for all customers, complying with all applicable laws, and the threat of litigation. *See id.* This in turn requires multiple HFT employees to weigh in on various issues arising out of the complaint before HFT provides a response.

---

including a … compilation … that: [¶] (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and [¶] (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Civ. Code, § 3426.1, subd. (d).

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER TO
PRESERVE CONFIDENTIALITY DESIGNATIONS

These communications between HFT employees therefore evidence HFT's marketing and business strategies (*see id.*), which courts regularly recognize as a proper basis for sealing. *See, e.g.*, *Bohannon*, 2014 U.S. Dist. LEXIS 156250, *10-13 (holding that disclosure of documents reflecting Facebook's processes and policies relating to refunds and returns "could cause Facebook economic harm, by both permitting users to learn how refunds are granted in certain circumstances, [ ] and also [by] informing Facebook's competitors what circumstances have merited and currently merit refund"). Additionally, to ensure that HFT's internal discussions are candid, thorough, and complete, HFT's employees need to know that their comments will be kept confidential. *See id.* Otherwise, they may hesitate to share their concerns about HFT's products in email communications, thereby impeding the flow of information that is essential to guaranteeing the quality and safety of those products. *See id.*; *see also Assembly of California v. United States Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992) (recognizing the need for decision-makers "to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny").

HFT has accordingly established that "specific harm or prejudice" will result if the at-issue documents are made public. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). Thus, these documents were properly designated as Confidential.[2]

---

[2] Indeed, the Court has already agreed to seal all of the 30 documents at issue, at least for purposes of a non-dispositive motion such as this one. *See* Dkt. No. 49.

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER TO PRESERVE CONFIDENTIALITY DESIGNATIONS

### B.   Plaintiffs' Counsel Failed to Adequately Meet And Confer Regarding Their Objections

Plaintiffs' spend much of their Opposition brief defending their meet and confer efforts and attacking the sufficiency of the Declaration of Danielle Cugini (HFT's Product Compliance Manager).  Yet, the objections that Plaintiffs' counsel now raises to the Cugini Declaration are precisely the sort of objections that Plaintiffs' counsel could have raised during the meet and confer process.  As detailed at length in HFT's opening brief, other than eventually demanding that HFT file a motion to preserve its confidentiality designations, Plaintiffs' counsel never responded to HFT's April 9, 2020 correspondence setting forth HFT's position on the challenged designations.  Plaintiffs' counsel's tactics forced HFT to file a motion to preserve its confidentiality designations of internal business documents without knowing the basis on which Plaintiffs' counsel disputed their designations.

The result is that HFT is now learning of Plaintiffs' counsel actual position for the very first time, with predictable consequences:  For example, Plaintiffs' counsel derides HFT's agreement to remove the "Highly Confidential" designation from 27 of the documents at issue as "meaningless," because they do not believe that the Protective Order allows for "Highly Confidential" designations.  Opp. at 9.  Yet in the 32 days between April 9, 2020, and May 11, 2020 (when Plaintiffs' filed their Opposition), not once did Plaintiffs' counsel raise this objection.  If they had, HFT could have addressed this objection during the meet and confer process.

Most importantly, at no time during the meet and confer did Plaintiffs' counsel argue that the information contained in the documents was publicly available, which appears to be the crux of their Opposition.  Though Plaintiffs' counsel now argues that the Cugini Declaration is inadequate to address this previously-unstated objection, *see id.* at 4-5, the clarification presented in the Cugini Declaration submitted in support of this Reply should be sufficient to address its concerns.

Nevertheless, Plaintiffs' have preemptively asked the Court to strike any supplemental declaration offered by HFT.  *See id.* at 11.  The only case cited by Plaintiffs in support of this request, however, concerned a supplemental *expert* declaration submitted in support of a reply.  *See Townsend v. Monster Bev. Corp.*, 303 F. Supp. 3d 1010, 1027 (C.D. Cal. 2018).  The numerous rules governing the timing and content of expert disclosures, of course, do not apply to the disclosure of fact witness testimony in support of a confidentiality designation.  More importantly, as *Townsend* acknowledges, the replying party is entitled to address issues that are "'raised by the opposition or unforeseen at the time of the original motion."  *Id.* (quoting *Burnham v. City of Rohnert Park*, 1992 U.S. Dist. LEXIS 8540, at *1 n. 2 (N.D. Cal. May 18, 1992).  Here, the supplemental declaration offered in support of HFT's Reply responds directly to arguments raised for the first time in Plaintiffs' Opposition regarding the public availability of the documents at issue.

Plaintiffs' counsel also insists that they did respond to the positions set forth in HFT's April 9, 2020 email – at 2:33 p.m. on April 28, 2020.  *See* Opp. at 10.  This correspondence, however, came only in response to HFT's final request for clarification on the day that HFT's motion was due.  *See* Sazer Decl. in Support of Mot. for Protective Order (Dkt. No. 45-3), Ex. A.  Even in that correspondence, Plaintiffs' counsel provided nothing more than a list of the 30 document designations to which they were still objecting; they did not articulate the basis of their objections, nor did they explain why they had agreed to drop their other 13 objections.  In short, Plaintiffs' last-minute correspondence contained too little and came too late.[3]

---

[3] Plaintiffs' counsel complains that HFT's assertion that certain of the documents at issue "reflect market or financial analysis performed by HFT . . . . is false."  Opp. at 5.  Although Plaintiffs' counsel did withdraw their challenges over these documents at the last minute on April 28, 2020 (with no explanation), several of the

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER TO
PRESERVE CONFIDENTIALITY DESIGNATIONS

By failing to participate in the meet and confer process in good faith, Plaintiffs' counsel deprived HFT of the opportunity to address the concerns that appear for the first time in their Opposition.  Those concerns have now been addressed, and the Court should find that the documents still at issue were properly designated as Confidential.

## III.   CONCLUSION

Plaintiffs' counsel claim that this dispute is nothing like *Ubiquiti Networks*, in which "one party argued unsuccessfully that the opposing party waived confidentiality designations by engaging in a lengthy meet and confer process."  Opp. at 9.  But that is exactly what transpired here:  Rather than filing its own motion to challenge HFT's designations – as Section 6.3 of the Protective Order instructs the Challenging Party to do – Plaintiffs' counsel led HFT to believe that the parties had resolved their dispute, intentionally ran out the clock, and only then informed HFT of their intention to treat its designations as waived in the absence of a motion from HFT.  Now, in response to HFT's Motion, Plaintiffs' counsel argues that HFT failed to adequately rebut objections that Plaintiffs' counsel never raised, and they seek to deny HFT the opportunity to respond to those objections now that they were finally raised.

Despite Plaintiffs' abuse of the meet and confer process and of the terms of the Protective Order, the record before the Court establishes that public disclosure of the internal HFT documents at issue would prejudice HFT.  Plaintiffs, in contrast, have nothing to gain from the public disclosure of documents that are already in their attorneys' possession and which relate to products that have already been recalled

original 43 documents challenged by Plaintiffs' counsel did indeed reflect market or financial analysis performed by HFT.

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER TO PRESERVE CONFIDENTIALITY DESIGNATIONS

1  and replaced.  The documents at issue are properly designated as Confidential, and
2  the Court should grant HFT's Motion for Protective Order.

3

4  Dated: May 18, 2020                    Respectfully submitted,

5                                          MINTZ LEVIN COHN FERRIS GLOVSKY AND
6                                          POPEO P.C.

7                                          /s/    Nicole V. Ozeran
8                                              Daniel J. Herling
9                                              Nicole V. Ozeran
                                               Attorneys for Defendants
10                                             HARBOR FREIGHT TOOLS USA INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER TO
PRESERVE CONFIDENTIALITY DESIGNATIONS