Daniel J. Herling (SBN 103711)
djherling@mintz.com
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
44 Montgomery Street, 36th Floor
San Francisco, California 94104
Telephone: 415-432-6000
Facsimile: 415-432-6001

Nicole V. Ozeran (SBN 302321)
nvozeran@mintz.com
Adam B. Korn (SBN 331133)
abkorn@mintz.com
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Telephone: 310-586-3200
Facsimile: 310-586-3202

Attorneys for Defendant,
HARBOR FREIGHT TOOLS USA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| WILL KAUPELIS AND FRANK ORTEGA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HARBOR FREIGHT TOOLS USA, INC.,<br><br>Defendant. | Case No. 8:19-cv-1203-JVS-DFM<br><br>**REPLY IN SUPPORT OF DEFENDANT HARBOR FREIGHT TOOLS USA, INC.'S MOTION TO EXCLUDE TESTIMONY OF STEVEN P. GASKIN AND COLIN B. WEIR**<br><br>Date: September 21, 2020<br>Time: 1:30 p.m.<br>Courtroom: 10C<br>Judge: Hon. James V. Selna<br><br>Complaint Filed: June 17, 2019<br>Trial Date: April 13, 2021 |

1

REPLY IN SUPPORT OF DEFENDANT HARBOR FREIGHT TOOLS USA, INC.'S MOTION
TO EXCLUDE TESTIMONY OF STEVEN P. GASKIN AND COLIN B. WEIR

## I. INTRODUCTION

Testimony of Plaintiffs' proffered experts Mr. Stephen P. Gaskin and Mr. Colin B. Weir concerning their attempt to establish classwide damages should be excluded. Gaskin's testimony concerning his proffered conjoint analysis is both irrelevant and unreliable, as he relies on a fundamentally unsound survey. Similarly, Weir's testimony should be excluded as Weir provides no assistance to the trier of fact. His simple arithmetic can be done by any layperson with an excel spreadsheet.

## II. ARGUMENT

### A. HFT Complied with Local Rule 7-3 as Plaintiffs Were Aware that HFT Intended to Move to Exclude Plaintiffs' Experts

On July 9, 2020, the parties filed a Stipulation to Extend Page Limit for Opposition and Reply Briefs Regarding Motion for Class Certification ("Stipulation"). Dkt. No. 61. In the Stipulation, the parties specifically address the fact that HFT would respond to expert testimony offered in support of Plaintiffs' Motion for Class Certification within HFT's opposition brief and "through separate motion practice." *Id.*, pp. 2:15-28. "While the discussions were cursory, they are sufficient to meet the requirements of LR 7-3." *Bohlman v. Am. Mgmt. Servs. Cal., Inc.*, 2011 U.S. Dist. LEXIS 165370, at *3 n.1 (C.D. Cal. Jan. 20, 2011) (Selna, J.).

Furthermore, Plaintiffs "fail[] to show how any issue could have been resolved out of court because [Plaintiffs] contest[] every issue raised by [HFT] in its motion." *Patton v. Experian Data Corp.*, 2018 U.S. Dist. LEXIS 231731, at *6-7 (C.D. Cal. Dec. 4, 2018) (Selna, J.); *see* Dkt. No. 101. Plaintiffs have not shown that any resources spent on this motion could have been conserved through further conferences of counsel, and in fact, their Opposition makes clear that any further meet and confer would have been futile as they maintain that neither Gaskin nor Weir should be excluded. *See generally* Dkt. No. 101.

Plaintiffs were aware that HFT intended to challenge the testimony of Gaskin and Weir testimony and any further meet and confer on the issue would not have impacted the instant Motion. The Court should, therefore, consider the Motion on its merits. *Patton v. Experian Data Corp.*, 2018 U.S. Dist. LEXIS 231731, at *6-7 ("Accordingly, while the meet and confer process was not as thorough as it should have been, the Court declines to deny Experian's motion for failure to comply with [Central District] Local Rule 7-3.").

### B. *Tait* is a Non-Issue

Plaintiffs' exaggerate the holding in *Tait*. *Tait* does not foreclose this Court from applying the *Daubert* standards of admissibility to expert testimony. Rather, *Tait* holds that, while courts must "apply Daubert's relevance and reliability requirements," it is within the Court's discretion to determine "how to test . . . which expert's testimony is both relevant and reliable." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 493 (C.D. Cal. 2012) (citation omitted). This Court has granted motions to exclude expert testimony even under this "tailored *Daubert* standard." *SFPP Right-Of-Way Claims*, 2017 U.S. Dist. LEXIS 85973, at *19 (C.D. Cal. May 23, 2017) (Selna, J.) ("Therefore, even under the tailored *Daubert* standard, Mr. Matthews' opinion fails because it is not sufficiently reliable. The Court grants Kinder Morgan's motion [to strike expert testimony]."); *In re First Am. Corp. Erisa Litig.*, 2009 U.S. Dist. LEXIS 49141, at *9 (C.D. Cal. Apr. 2, 2009) (Selna, J.) (granting motion to strike expert declaration because it was "irrelevant to the Rule 23 analysis"). The Court should make the same finding here.

In the Motion's introductory paragraph, HFT makes clear that it seeks to exclude the opinions of Plaintiffs' "two experts—Colin B. Weir and Stephen P. Gaskin—who attempt to present a classwide damages model using conjoint analysis." Dkt. No 68-1, p. 1:7-9 (citing Dkt. No. 34-2, Exs. 24, 29). Classwide damages relate to Rule 23(b)(3)'s predominance requirement. *Schmitt v. Younique*

*LLC*, 2019 U.S. Dist. LEXIS 60669, at *23 (C.D. Cal. Jan. 10, 2019) (Selna, J.) ("In order to satisfy the Rule 23(b)(3) predominance requirement, *Comcast* also dictates that Plaintiffs must present a damages model that demonstrates that damages can be reliably calculated on a class-wide basis."). Indeed, HFT's entire Motion argues that Gaskin's survey and Weir's arithmetic fail to provide a method for calculating classwide damages. *See generally* Dkt. No. 68-1 (arguing that Gaskin's survey is unreliable and irrelevant because it fails to consider numerous factors). HFT's critique of Gaskin and Weir goes directly to their unreliability or irrelevancy to establishing classwide damages and HFT's Motion is properly before this Court.

### C. Gaskin's Testimony is Fundamentally Unsound and Should Be Excluded

Plaintiffs incorrectly contend that reliability[1] of an expert's opinions only goes to weight, rather than admissibility. Dkt. No. 101, pp. 6:15-7:2. In fact, where an expert's opinions are irrelevant and unreliable, they should be excluded. "Rule 702 imposes a basic gatekeeping obligation on district courts to ensure that any and all scientific testimony—including testimony based on technical[] or other specialized knowledge—is not only relevant, but reliable." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1035 (9th Cir. 2010) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)) (quotation marks omitted).

Contrary to the position Plaintiffs' Opposition takes, HFT does not challenge Gaskin's testimony because his survey is "imperfect," has minor "flaws," or "fail[s] to account for certain important product attributes." Dkt. No. 101, pp. 7:22-8:3. Rather, HFT seeks to exclude Gaskin's opinions because the methodology upon

---

[1] Plaintiffs also claim that HFT does not challenge Gaskin on the basis of relevance or methodology. Dkt. No. 101, p. 6:15-16. This claim is not true. Dkt. No. 68-1, pp. 4:21-8:11 (discussing Gaskin's failure to account for basic survey principles), p. 8:9-11 ("Gaskin's failure to present a reliable survey model renders his testimony so incomplete that it is inadmissible as *irrelevant*.") (emphasis added).

1  which his opinions are based is fundamentally unsound. His opinions are therefore
2  irrelevant, unreliable, and entirely unhelpful to the trier of fact in understanding
3  evidence or in determining a fact in issue for purposes of class certification and, as a
4  result, should be excluded. *In re Live Concert Antitrust Litig.,* 863 F. Supp. 2d 966,
5  973 (C.D. Cal. 2012) (finding that an expert's analysis may be so incomplete that it
6  is inadmissible as irrelevant).

        **1.    Failure to Consider Realistic Market Conditions Ignores Accepted Principles and Renders Gaskin's Methodology Unreliable and Irrelevant**

9        It is well-established that "a conjoint analysis will not be reliable if it considers
10  only 'the demand side of the market equation.'" *Schechner v. Whirlpool Corp.*, 2018
11  U.S. Dist. LEXIS 221847, *16 (E.D. Mich. Oct. 30, 2018) (quoting *In re NJOY*
12  *Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1119 (C.D. Cal. 2015)). Yet,
13  Plaintiffs attempt to argue otherwise. Dkt. No. 101, p. 8. 7:10-8:8 (citing *Schmitt v.*
14  *Younique LLC*, 2019 U.S. Dist. LEXIS 60669 (C.D. Cal. Jan. 10, 2019)). Plaintiffs
15  misconstrue *Schmitt*.

16        In *Schmitt,* the Court considered whether the plaintiff's proffered "damages
17  methodology would determine a price premium for a product that includes natural
18  rather than synthetic fibers." *Id*. at *25. The Court found that a "methodologically
19  plausible theory of classwide recovery" exists because comparable products "can
20  provide data for a reasonable price premium model." *Id.* at *27 ("data on costs of
21  goods per unit (including commissions and rewards) and other costs associated with
22  unit sales can be obtained from [Younique].").  This is not the case in the instant
23  matter. No comparable chainsaws with a disclaimer regarding a potential product
24  malfunction exist. Dkt. No. 68-3, Ex. B ("Gaskin Depo."), p. 52:3-19 (admitting that
25  he has never seen a retail product sold with a defect disclosed (let alone with an
26  "extraordinarily dangerous" defect disclosed)). Therefore, the data required for a
27  supply side analysis **does not exist**. *In re GM LLC Ignition Switch Litig.*, 407 F.
28

5

Supp. 3d 212, 239 (S.D.N.Y. 2019) ("Accounting for supply-side factors is not so simple [] where the alleged misrepresentations and omissions concern dangerous defects, as in this case. After all, products containing such defects are rarely (if ever) sold (or allowed to be sold by regulators) when the defects are fully disclosed. It follows that **market data for products in the but-for scenario are not available**. . .") (emphasis added). Plaintiffs' claim that Gaskin accounted for supply side factors is unpersuasive, as it is impossible for him to have done so. Dkt. No. 101, p. 8:9-15.

Similarly, Plaintiffs' reliance on *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018) is misplaced.[2] *Hadley* holds that conjoint analyses can adequately account for supply-side factors price *premia* when, in part, "the prices used in the surveys underlying the analyses reflect **the actual market prices** that prevailed during the class period." *Id.* at 1105 (emphasis added). Again, this is precisely the problem with Gaskin's proposed survey—Gaskin has no market prices to rely on because there is no market for a chainsaw with a disclaimer disclosing an allegedly "extraordinarily dangerous" defect. *See In re NJOY*, 120 F. Supp. 3d at 1119 (rejecting conjoint analysis damages model because it "completely ignores the price for which NJOY is willing to sell its products"); *Saavedra v. Eli Lilly & Co.*, 2014 U.S. Dist. LEXIS 179088, at *14 (C.D. Cal. Dec. 18, 2014) (rejecting conjoint analysis model because it failed to consider "willingness to sell").

Gaskin's failure to consider supply side factors is not a minor flaw or error, as Plaintiffs appear to contend; it cannot simply be "elucidated on cross-examination." Dkt. No. 101, pp. 7:21-8:8. It is a fundamental error in methodology that renders the survey useless, irrelevant, and unreliable. *In re GM LLC Ignition Switch Litig.*, 407

---

[2] In fact, in each of the cases cited by Plaintiffs where the court found that a conjoint analysis could be established, the Court relied on the existence of "comparable" products and "actual market-clearing prices" for the analysis. Dkt. No. 101, p. 9:7-27. This is not the case here, as no such market or comparable products exist.

REPLY IN SUPPORT OF DEFENDANT HARBOR FREIGHT TOOLS USA, INC.'S MOTION TO EXCLUDE TESTIMONY OF STEVEN P. GASKIN AND COLIN B. WEIR

F. Supp. 3d at 239; *Schechner v. Whirlpool Corp.*, 2018 U.S. Dist. LEXIS 221847, at *16; *In re NJOY Consumer Class Action Litig.*, 120 F. Supp. 3d at 1119. Accordingly, Gaskin's testimony concerning the conjoint analysis and survey that he intends to perform is not reliable and should be excluded for purposes of class certification.

### 2. Gaskin's Survey Reflects Bias and Does Not Align with Plaintiffs' Theory of Liability

Gaskin's survey suffers from focalism bias and is impermissibly vague. For these reasons as well, Gaskin's survey is unreliable and his testimony based on this survey should be excluded.

Plaintiffs incorrectly claim that *Townsend v. Monster Bev. Corp.*, 303 F. Supp. 3d 1010, (C.D. Cal. 2018) (*Townsend*) "has no bearing on [this] Court's analysis." Dkt. No. 101, pp. 14:27-15:12 (citing *Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, 345 F. Supp. 3d 1111, 1117 (N.D. Cal. 2018) (*Fitzhenry-Russell)*). *Fitzhenry-Russell* does not disturb the holding in *Townsend* regarding the impact of focalism bias on the legitimacy of a proposed survey. In fact, *Fitzhenry-Russell* does not make a single mention of "focalism bias." *See generally Fitzhenry-Russell,* 345 F. Supp. 3d 1111. "Plaintiffs have failed to justify adequately [Gaskin's] attribute selection for the conjoint analysis or illustrate how the price premium determination is reliable in light of [HFT's] well-supported criticisms." *Townsend*, 303 F. Supp. 3d at 1050. Accordingly, Gaskin's "model is not an adequate measure of damages [because the] survey design suffers from focalism bias, rendering it useless for the purpose of determining price premiums attributable to the challenged statements." *Id.* at 1049.

Moreover, Gaskin's survey's reference to whether the Chainsaw "may or may not be able to be returned and replaced" and the implied manifestation rate are vague and unclear. Failure to inform participants of their ability to return the Chainsaw and the exaggerated trigger issue manifestation rate inaccurately inflates Gaskin's

1  damages calculations, rendering Gaskin's conclusions unreliable. *Davidson v.*
2  *Apple, Inc.*, 2019 U.S. Dist. LEXIS 103624, *41-43 (N.D. Cal. June 20, 2019).

3        **D.**      **Weir's Testimony Should Also Be Excluded**

4               **1.**      **Weir's Testimony Adds No Value**

5        Mr. Weir's testimony should be excluded because he did nothing more than
6  use a spreadsheet to conduct arithmetic. *Waymo LLC v. Uber Techs., Inc.*, 2017 U.S.
7  Dist. LEXIS 183688, *22 (N.D. Cal. Nov. 2, 2017) ("Straightforward application of
8  grade-school arithmetic to uncomplicated numbers is well within the ken of the
9  average juror."); *United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir. 1997)
10 (holding that expert witness testimony is admissible under FRE 702 only if the
11 subject matter at issue is "beyond the common knowledge of the average layman").

12       Plaintiffs acknowledge that Mr. Weir simply added and subtracted columns in
13 an excel spreadsheet; however, they contend that expert knowledge was required to
14 add and subtract the columns *because the spreadsheet was very large*. Dkt. No. 101,
15 p. 16:6-12 ("HFT's sales data was not reported as one or even a few numbers that
16 could be readily added . . . [the] data contained over 20,660 spreadsheet entries [that
17 needed to be added]. . . There is nothing 'simple' about dealing with this volume of
18 data."). However, Plaintiffs ignore the fact that the number of cells in an excel
19 spreadsheet has no impact on the program's ability to perform arithmetic. Any
20 layperson can easily add thousands of excel cells with a couple clicks—no expert
21 knowledge is needed.

22       The cases cited by Plaintiffs in support of their argument that Mr. Weir's
23 arithmetic constitutes an expert opinion are inapposite. Dkt. No. 101, pp. 16:12-17:4.
24 In *United States ex rel. Macias v. Pac. Health Corp.*, 2018 U.S. Dist. LEXIS 27891,
25 at *14 (C.D. Cal. Feb. 20, 2018), the Court found that "Mr. Arrigo's opinions do not
26 boil down to simple math" because "Mr. Arrigo needed to have knowledge about
27 Medicare billing practices as well as billing codes and the breakdown of medical

28

1  billing [in order to determine which billing entries should be included in his
2  calculations]. Therefore, Mr. Arrigo's opinion is not so simple." *Id.* In the instant
3  matter, no such specialized knowledge was required—Weir added and subtracted
4  various columns in the excel spreadsheet based on instructions from counsel, not
5  based on his alleged expert understanding of damages. Dkt. No. 101-1, Ex. 6 at p.
6  60:5-7 ("Yeah, I asked for advice from counsel with respect to the statute of
7  limitations as it would apply in this case. . ."); *id.* at p. 60:24-25 ("That was how I
8  was told to interpret that statute. . ."). Accordingly, Weir's simple arithmetic is not
9  beyond the average layperson and should be excluded from being presented as expert
10 testimony.

11     Plaintiffs' citation to *Woods v. Conagra Foods Lamb Weston, Inc.*, 2016 U.S.
12 Dist. LEXIS 126584, at *8 (E.D. Wash. June 3, 2016) further supports HFT's
13 position that specialized knowledge is required for an expert's opinions to be
14 admissible. In *Wood*, the Court declined to exclude expert Dr. Guenthner's proffered
15 testimony because "[a] juror's life experience probably will not include the
16 calculation of losses following the breach of a **potato** contract." (emphasis added).
17 Conveniently, Plaintiffs omit the keyword "potato" from the quote in their
18 Opposition. Dkt. 101, p. 16:27-28. In fact, potato contracts are unique and
19 complicated matters that most laymen will never encounter. Dr. Guenthner, who has
20 a Ph.D. in agricultural economics and is a professor emeritus of agricultural
21 economics, utilized his expert knowledge when determining the calculations to be
22 conducted for this very specific type of contract. *Id*. at *6-7. Weir did not rely on
23 his alleged expert knowledge when he used the excel spreadsheet (or at least he does
24 not tout himself as an expert in excel). He simply added and subtracted columns in
25 an excel spreadsheet, excluding certain cells based on counsel's instruction. Dkt.
26 No. 101-1, Ex. 6 at pp. 60:5-7, 60:24-25.

27
28

Finally, in *WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1039 (8th Cir. 2011)—cited by Plaintiffs—the Eighth Circuit upheld the district court's denial of the defendant's motion to exclude plaintiff's forensic accountant expert. The court found that the expert "analyz[ed] a substantial amount of financial data, and applied reliable methods in forming opinions that would help the jury understand the evidence." *Id.* (quotation omitted). Specifically, the expert made mathematical calculations that led to his opinion that donations had been misdirected. *Id.* The expert relied on his expertise to determine how he would perform his calculations and to opine on what these calculations ultimately indicated.[3] Here, no such reliance on Weir's alleged expertise occurred. He simply conducted arithmetic and stated that, based on what counsel had told him, that his final numbers must indicate class members' damages.

Weir performed no tasks "beyond the common knowledge of the average layperson." Accordingly, Weir's testimony regarding the damages calculation should be excluded.

### 2. Plaintiffs Agree That Weir Is Unqualified to Testify Regarding the Recall

Plaintiffs concede that Weir is unqualified to provide opinions regarding the Recall, though they contest whether Weir proffers any such opinions. Dkt. No. 101, p. 18:8-22. Review of the record, however, shows that Weir in fact proffered testimony regarding the efficacy and structure of HFT's Recall. Weir testified that he "find[s] there to be many structural deficiencies with the recall program" (Dkt. No. 68-2, p. 17:8-14) and "that [HFT] did not exceed th[e] minimum responsibilities

---

[3] The same is true for the experts in *Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*, 2019 U.S. Dist. LEXIS 85733, at *6 (E.D. Tex. May 20, 2019) and *Rush v. Wyeth (In re Prempro Prods. Liab. Litig.)*, 514 F.3d 825, 831 (8th Cir. 2008) ("Dr. Chodosh's conclusion that the HRT drugs could not have caused the breast cancer is an exercise in basic math *using simple deductive reasoning*." (emphasis added)).

[for a recall]." *Id.* at p, 18:3-13.  These opinions should be excluded as Weir is not qualified to make such opinions.

### III. CONCLUSION

Gaskin's proposed conjoint analysis and survey fail to account for supply side factors and biases, rendering each of Gaskin's opinions unreliable and irrelevant to class certification.  Moreover, Weir's testimony concerning simple arithmetic provides no benefit to the trier of fact and he is unqualified to provide testimony regarding the effectiveness of HFT's Recall.  Accordingly, the Court should exclude Gaskin's and Weir's testimony as they do not meet the requirements of *Daubert* and Federal Rule of Evidence 702.  In the alternative, the Court should give Gaskin's and Weir's opinions no weight as Gaskin and Weir fail to present any testimony that aids the trier of fact.

Dated: September 7, 2020

Respectfully submitted,
MINTZ LEVIN COHN FERRIS
  GLOVSKY AND POPEO P.C.

/s/Nicole V. Ozeran
Daniel J. Herling
Nicole V. Ozeran
Attorneys for Defendants
HARBOR FREIGHT TOOLS USA, INC.

REPLY IN SUPPORT OF DEFENDANT HARBOR FREIGHT TOOLS USA, INC.'S MOTION TO EXCLUDE TESTIMONY OF STEVEN P. GASKIN AND COLIN B. WEIR