UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1203 JVS (DFMx)) | Date | January 12, 2022 |
| Title | Will Kaupelis et al. v. Harbor Freight Tools USA, Inc. | | |

| | |
|---|---|
| Present: The Honorable | **James V. Selna, U.S. District Court Judge** |

| | |
|---|---|
| Lisa Bredahl | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Order Regarding Motion for Final Approval of Class Settlement and Motion for Approval of Attorneys' Fees**

Plaintiffs Will Kaupelis ("Kaupelis") and Frank Ortega ("Ortega") (collectively, "Plaintiffs") filed a motion for final approval of a nationwide class action settlement. Dkt. No. 184; see Approval Mot., Dkt. No. 184-1. Plaintiffs also filed a motion for attorneys' fees, costs, and incentive awards. Dkt. No. 183; see Fees Mot., Dkt. No. 183-1. Defendant Harbor Freight Tools USA, Inc. ("Harbor Freight") filed statements of non-opposition with respect to both motions. See Dkt. Nos. 185, 186.

On January 10, 2022, the Court held a hearing on the motions. There were no objections to the settlement. The Court continued the matter to January 18, 2022. Upon request of the Court, Plaintiffs filed a supplemental brief regarding costs. See Dkt. No. 193. The Court reviewed the supplemental briefing and finds that further oral argument is not necessary. The Court **VACATES** the hearing scheduled for January 18, 2022.

For the following reasons, the Court **GRANTS** final approval of the Settlement, **GRANTS** Plaintiffs $415,395.80 in attorneys' fees, **GRANTS** Plaintiffs $249,604.20 in litigation costs and expenses, and **GRANTS** service payments of $3,000 to each of the named Plaintiffs.

**I. BACKGROUND**

*A.    Allegations and Procedural History*

The general background of this dispute is well-known to the parties and to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1203 JVS (DFMx)) | Date | January 12, 2021 |
| Title | Will Kaupelis et al. v. Harbor Freight Tools USA, Inc. | | |

Court. Plaintiffs allege that Harbor Freight misled consumers and breached implied warranties by selling chainsaws with defective power switches. See Compl., Dkt. No. 1. Kaupelis purchased a Portland 14-inch electric chainsaw from Harbor Freight in the fall of 2016. Kaupelis Dep., Dkt. No. 33-2, at 13. Ortega purchased one in early 2017. Ortega Dep., Dkt. No. 33-2, at 42. Shortly thereafter, both plaintiffs found that their chainsaws continued to run when the power switch was in the "off" position. Kaupelis Dep. at 17, 20-21; Ortega Dep. at 45-47. Three to four months later, Plaintiffs disposed of their respective chainsaws because of the problem. Kaupelis Dep. at 174; Ortega Dep. at 49.

Plaintiffs allege that Kaupelis and Ortega both purchased chainsaws that contained a severe product defect that led to Harbor Freight's March 2018 recall of the chainsaws. Compl. ¶ 1. The key defect alleged in the chainsaws is the existence of a single pole internal power switch that was prone to becoming fused in the "on" position. Response to Interrogatory No. 11, Dkt. No. 33-2, at 88. Since June 2015, Harbor Freight had sold approximately 440,710 chainsaws across the country. Weir Decl., Dkt. No. 33-2, at 366. The chainsaws were sold for $49.99 each. Tomlin Decl., Dkt. No. 73-2, at 318 ¶ 50. Through late 2020, 6.6% of customers participated in a recall. Mohorovic Decl., Dkt. No. 73-2, at 405 ¶ 51 n.61.

On June 17, 2019, Plaintiffs filed their complaint in the instant suit. See generally Compl. Plaintiffs raise claims for (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, et seq.; (2) violation of California's Unfair Competition Law, Business and Professions Code §§ 17200-17210; (3) fraud by omission; (4) unjust enrichment; (5) breach of implied warranty under the Song-Beverly Act, California Civil Code 1790 et seq. and California Commercial Code § 2314; and (6) violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq. Id. ¶ 2.

*B. Summary of the Settlement*

    *1.    The Settlement Class*

The Settlement Class is defined as:

> "all people who have purchased a Class Product during the Class Period. Excluded from the Class are: (a) anyone who has participated in the Chainsaw Recall prior to the date of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1203 JVS (DFMx)) | Date | January 12, 2021 |
| Title | Will Kaupelis et al. v. Harbor Freight Tools USA, Inc. | | |

Preliminary Approval Order; (b) Defendant and its employees, principals, officers, directors, agents, affiliated entities, legal representatives, successors and assigns; (c) the judges to whom the Action has been or is assigned and any members of their immediate families; and, (d) all persons who have filed a timely Request for Exclusion from the Class."

Settlement Agreement, Dkt. No. 174-2, Ex. 1, ¶ 8. The Class Products are defined as "any 14" Electric Chainsaws sold under the Portland, One Stop Gardens, or Chicago Electric brands, and with SKU No. 67255 or 61592." Id. ¶ 14. The Class Period is defined as the period from March 11, 2011, "up to and including the date this Agreement is fully executed." Id. ¶ 13. The date of the last signatures added to the Settlement Agreement is July 7, 2021. See generally id. The Settlement Class consists of approximately 800,000 individuals. Approval Mot. at 3.

        *2.      Settlement Amount and Injunctive Relief*

Under the terms of the Settlement, consumers will be entitled to different forms of relief depending on which category they fall into.

First, class members who still have their chainsaws are entitled to choose either $50 cash, a replacement chainsaw valued at $50, or a $50 Harbor Freight gift card. See Settlement Agreement ¶ 46. Next, class members who no longer have their chainsaws but do have proof of purchase or proof of destruction are entitled to their choice of either $50 cash or a $50 Harbor Freight gift card. See id. ¶ 47. Finally, class members who do not have their chainsaws, proof of purchase, or proof of destruction are entitled a choice of either $10 cash or a $25 Harbor Freight gift card. See id. ¶ 48. The parties estimate that the potential total value of settlement relief is between $8 million and $40 million based on the number of chainsaws sold minus the number of individuals who participated in the recall. See Approval Mot. at 3.

        *3.      Attorneys' Fees and Costs*

Class Counsel request a total of $665,000 in attorneys' fees and expenses. See Fees Mot. at 1-2. Harbor Freight has agreed to pay attorneys' fees and costs, provided that the sum does not exceed $665,000. See Approval Mot. at 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 19-1203 JVS (DFMx))  Date  January 12, 2021

Title  Will Kaupelis et al. v. Harbor Freight Tools USA, Inc.

4. *Administrative Expenses and Service Awards*

Harbor Freight agreed to separately pay for the costs of settlement notice and administration. See Settlement Agreement ¶ 52. Additionally, Harbor Freight agreed not to oppose service awards to the two named plaintiffs of up to $3,000 each. See id. ¶ 60; Approval Mot. at 4.

5. *Release*

On final approval of the Settlement Agreement, "the Releasing Parties shall be deemed to have, and by operation of the Final Order and Final Judgment shall have, fully, finally and forever released, relinquished, and discharged all Released Claims, each Releasing Party shall be deemed as of the Effective Date of have expressly, knowingly, and voluntarily waived any and all provisions, rights, benefits conferred by Section 1542 of the California Civil Code, and any statute, rule and legal doctrine similar, comparable, or equivalent to Section 1542 . . .." Settlement Agreement ¶ 64. "Plaintiffs and Class Members are not releasing any claims for personal injuries." Id. ¶ 64.

The "Releasing Parties" are "Plaintiffs and all Class Members, and any person claiming by or through each Class Member, including but not limited to spouses, children, wards, heirs, devisees, invitees, employees, associates, co-owners, attorneys, agents, administrators, predecessors, successors, assignees, representatives of any kind, shareholders, partners, directors, or affiliates." Id. ¶ 33. The "Released Claims" are "any and all claims, causes of action, demands, debts, suits, liabilities, obligations, damages, entitlements, losses, actions, rights of action and remedies of any kind, nature and description, whether known or unknown, asserted or unasserted, foreseen or unforeseen, regardless of any legal or equitable theory, existing now or arising in the future, by Plaintiffs and any and all Class Members (including their successors, heirs, assigns and representatives) which in any way relate to the failure or propensity for failure of the power switch in Class Products . . .." Id. ¶ 31.

6. *Notice*

The Parties selected RG/2 Claims Administration, LLC ("RG/2") to be the Settlement Administrator. Settlement Agreement ¶ 52. The Court approved that selection

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1203 JVS (DFMx)) | Date | January 12, 2021 |
| Title | Will Kaupelis et al. v. Harbor Freight Tools USA, Inc. | | |

and appointed RG/2 as Administrator. See generally Dkt. No. 179. Harbor Freight provided RG/2 with the contact information for approximately 441,236 Class Members. Montague Decl., Dkt. No. 184-2, ¶ 9. On September 10, 2021, RG/2 sent the Summary Class Notice via email to 209,490 Class Members for whom Harbor Freight provided an email address. Id. ¶ 11. Based on its research, RG/2 identified valid email addresses for another 84,992 Class Members and sent them the Summary Class Notice via email. Id. On September 24, 2021, RG/2 mailed postcard notices to the remaining 146,854 Class Members for whom they had contact information but did not have a known valid email address. Id. ¶ 12. Both the email and postcard notices directed Class Members to the Settlement Website that provided additional information about the Settlement and allowed class members to file a claim online. Id. ¶¶ 11-12.

In additional to individual notice via email and postcard, RG/2 engaged in a targeted online media campaign beginning on September 10, 2021. Id. ¶ 14. The digital media campaign produced over 9.6 million impressions through advertisements on Facebook, Instagram, YouTube, Google Paid Search, and Bing Paid Search. Id. The goal of the notice plan was to disseminate Class Notice to 80% of the Settlement Class. Id.

    7.  *Opt-Out and Objection Process*

Every person within the definition of the Settlement Class had the right to opt-out. Settlement Agreement ¶ 85. Both the Summary Notice and the Long Form Notice informed each individual of the individual's right to request exclusion from the Settlement Class and not to be bound by the Settlement Agreement. See Smith Decl., Dkt. No. 174-2, Exs. 4 & 5; Approval Mot. at 5. Any Class Member who wished to object to the proposed Settlement was required to mail or file with the Court a written objection to the Settlement prior to the Opt-Out or Objection Deadline. Settlement Agreement ¶ 86.

    8.  *Revocation of Agreement*

The Parties retain the right to terminate the Settlement Agreement if "(a) The preliminary or final approval of this Agreement is not obtained without substantial modification, which modification the Parties did not agree to and which modification the terminating Party deems in good faith to be material . . .; or (b) The Final Order and Final Judgment is reversed, vacated, or modified in any material respect by another court, except that it is expressly agreed by the Parties that any reduction of the Court's award of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1203 JVS (DFMx)) | Date | January 12, 2021 |
| Title | Will Kaupelis et al. v. Harbor Freight Tools USA, Inc. | | |

Attorneys' Fees and Expenses shall not be grounds to terminate this Agreement." Settlement Agreement ¶ 99.

      C.     *Results of Notice*

Notice was delivered to all of the 441,236 Settlement Class Members for whom contact information was provided by Harbor Freight. Montague Decl. ¶¶ 9, 11-12. A total of 294,382 class members were initially contacted via email, and 146,854 class members received mailed notices. Id. An additional 47,089 Notices were mailed to class members whose email addresses were invalid. Id. ¶ 12. Just 1,340 Notices, less than 1% of the total mailed Notices, were ultimately undeliverable by mail. Id. ¶ 13. The digital advertising campaign generated an additional 9.6 million impressions. Id. ¶ 14.

The deadline for submitting Claim Forms, Requests for Exclusion and Objections was on November 24, 2021. Montague Decl. ¶¶ 16, 17. As of December 29, 2021, RG/2 had received 20,201 claim forms and 5 requests for exclusion from the settlement. See Montague Decl. ¶¶ 15, 16; Montague Supp. Decl., Dkt. No. 187, ¶ 4. Additionally, 5,579 Class Products were returned to Harbor Freight stores between July 25, 2021 and November 30, 2021. Id. ¶ 18.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure Rule 23(e) requires court approval for class-action settlements. Fed. R. Civ. P. 23(e). The court must determine whether the proposed settlement is "fundamentally fair, adequate, and reasonable." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)). While the inquiry encompasses a number of different factors, "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Id.

## III. DISCUSSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. SACV 19-1203 JVS (DFMx))     Date   January 12, 2021

Title    Will Kaupelis et al. v. Harbor Freight Tools USA, Inc.

      A.      *Class Certification*

The Court preliminarily certified the proposed Class in its prior order. Dkt. No. 179, at 13. No party has given the Court reason to revisit that earlier decision. Therefore, for the reasons specified in its preliminary approval order, the Court certifies the Settlement Class for final approval of the Settlement.

      B.      *Approval of the Proposed Class Settlement*

           1.      *The Fairness Factors Support Settlement Approval*

Under Rule 23(e)(2) if the proposed settlement would bind class members, the Court may approve it only after a hearing and only on finding that it is fair, reasonable and adequate. To make this determination, the Court must consider the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>       (i) the costs, risks, and delay of trial and appeal;
>       (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>       (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>       (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Before the revisions to the Federal Rule of Civil Procedure 23(e), the Ninth Circuit had developed its own list of factors to be considered. See e.g., In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 964 (9th Cir. 2011) (citing Churchill Village, L.L.C. v. General Electric, 361 F.3d 566, 575 (9th Cir. 2004)). The revised Rule 23 "directs the parties to present [their] settlement to the court in terms of [this new] shorter list of core concerns[.]" Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. "The goal of [amended Rule 23(e)] is . . . to focus the [district] court and the lawyers on the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1203 JVS (DFMx)) | Date | January 12, 2021 |
| Title | Will Kaupelis et al. v. Harbor Freight Tools USA, Inc. | | |

core concerns of procedure and substance that should guide the decision whether to approve the proposal." Id.

> a. *Adequacy of Representation by Class Representatives and Class Counsel*

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representatives and class counsel have adequately represented the class. This analysis includes "the nature and amount of discovery" undertaken in the litigation. Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes.

The Court finds that the class representatives and class counsel adequately represented the class in this case. The initial complaint in this case was filed more than two years ago. In the intervening time, Class Counsel analyzed thousands of pages of documents, engaged in multiple fact and expert witness depositions, and litigated multiple motions to compel. See Smith Decl., Dkt. No. 174-2, ¶ 3; Approval Mot. at 8. Additionally, the parties litigated a motion for class certification, see Dkt. No. 136, and both of the named plaintiffs sat for a deposition. See Smith Decl., Dkt. No. 174-2, ¶ 5. Thus, this factor weighs in favor of approval.

> b. *Negotiated at Arm's Length*

The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. "[T]he involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether th[ose] [negotiations] were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes; accord Pederson v. Airport Terminal Services, 2018 WL 2138457, at *7 (C.D. Cal. April 5, 2018) (the oversight "of an experienced mediator" reflected noncollusive negotiations).

The Court finds that the Settlement was negotiated at arm's length. Notably, the Settlement Agreement is the result of a mediation before Magistrate Judge McCormick. See Smith Decl., Dkt. No. 174-2, ¶ 4. The Parties only began to negotiate attorneys' fees

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 19-1203 JVS (DFMx))  Date  January 12, 2021

Title  Will Kaupelis et al. v. Harbor Freight Tools USA, Inc.

and expenses after the Parties reached an agreement as to all other terms of the Settlement Agreement. Id. In sum, the conduct throughout the negotiations was appropriate to protect the Class's interests.

The Court is therefore confident in the arm's length process the Parties undertook, and that the Settlement is not the production of collusion.

        *c.*     *Adequacy of Relief Provided for the Class*

The third factor the Court considers is whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), Advisory Committee Notes.

Of the approximately 800,000 class members, only five individuals requested to be excluded from the settlement and there were no objections submitted. Montague Decl. ¶¶ 15-16, Ex. F. The absence of any objections supports the conclusion that the terms of the settlement are favorable to class members. See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 529 (C.D. Cal. 2004); Ybarra v. Bd. of Trustees of Supplemental Income Tr. Fund, 2019 WL 12536179, at *6 (C.D. Cal. Sept. 30, 2019).

The Court therefore concludes that the relief provided for Class Members is, at a general level, adequate. The Court now turns to a more particular consideration of the factors outlined in Rule 23(e)(2)(C).

        *i.*     *Costs, Risks, and Delay of Trial and Appeal*

"A[] central concern [when evaluating a proposed class action settlement] . . . relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Nat'l Rural Telecomms. Coop., 221 F.R.D. at 526 (internal quotation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-1203 JVS (DFMx))      Date    January 12, 2021

Title      Will Kaupelis et al. v. Harbor Freight Tools USA, Inc.

When faced with a case that is difficult to prove, "a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (quoting Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982)).

     Class Counsel assert that absent a settlement, class members would risk receiving nothing on summary judgment or at trial. Approval Mot. at 11. They argue that for Class Members who have the Class Product, proof of purchase, or proof of destruction, the Settlement benefit of full refund or replacement is likely similar to the best realistic outcome at trial. Id. While the other Class Members are entitled to less, they would face additional difficulties in proving that they purchased Class Products. Additionally, Class Counsel argue that even if they were ultimately successful at summary judgment and trial, ongoing litigation would consume additional resources. Id. The Court agrees. This subfactor favors approval of the Class Settlement because in its absence there will be inevitable costs and the risk of a smaller recovery, without the potential for significant additional benefit to the class members.

                              *ii.     Effectiveness of Proposed Method of Relief Distribution*

     Next, the Court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Id.

     The parties provided for two different methods of obtaining relief. First, Class Members who still owned a Class Product could return them at any of Harbor Freight's nearly 1,200 stores. Between July 25, 2021 and November 30, 2021, Class Members returned 5,579 Class Products to Harbor Freight stores, making up approximately 20% of the total Class Members who sought relief. Montague Decl. ¶ 18. Alternatively, Class Members could visit the Settlement Website and either complete the claim form online or print the form and mail a completed copy to the Settlement Administrator. Requiring completion of a claims form is not onerous, and the parties provided multiple options to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1203 JVS (DFMx)) | Date | January 12, 2021 |
| Title | Will Kaupelis et al. v. Harbor Freight Tools USA, Inc. | | |

do so. See In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, & Products Liability Litigation, 2013 WL 3224585, at *18 (C.D. Cal. June 17, 2013) ("The requirement that class members download a claim form or request in writing a claim form, complete the form, and mail it back to the settlement administrator is not onerous."). The Court concludes that the method of relief distribution was effective.

### iii. Terms of Proposed Award of Attorneys' Fees

Third, the Court must consider "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(c).

Class Counsel seeks a total of $665,000 in attorneys' fees and expenses. Litigation expenses account for $249,604.20 of that sum, with the remaining $415,395.80 requested as an attorneys' fees award. After considering Class Counsel's motion for attorneys' fees, the Court concludes that the requested amount of attorneys' fees is reasonable relative to the benefits of the Settlement for Settlement Class Members. See infra Section III.D. This factor weighs in favor of approval.

### iv. Agreement Identification Requirement

The Court must also evaluate any agreement made in connection with the proposed Settlement. See Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Here, the Settlement Agreement before this Court is the only agreement. See Smith Decl., Dkt. No. 177-1, ¶ 2 ("There are no undisclosed side agreements between the parties or with third parties."). Thus, the Court need not evaluate any additional agreements outside of the evaluation it makes of the Settlement Agreement.

The Court is satisfied that the form of relief is adequate.

### d. Equitable Treatment of Class Members

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. SACV 19-1203 JVS (DFMx))     Date January 12, 2021

Title    Will Kaupelis et al. v. Harbor Freight Tools USA, Inc.

relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee Notes.

     The Settlement draws a distinction between three different groups of Class Members. Class Members who still own a Class Product and return it to a Harbor Freight Store are eligible to receive either $50 cash, a $50 Harbor Freight gift card, or a replacement chainsaw valued at approximately $50. Settlement Agreement ¶ 46. Class Members who no longer possess a Class Product, but who do have proof of purchase or proof of destruction are also eligible to receive either $50 cash, a $50 Harbor Freight gift card, or a replacement chainsaw valued at approximately $50. Id. ¶ 47. The final group of Class Members who no longer possess a Class Product, and lack proof of purchase or destruction are only eligible to receive either $10 cash or a $25 Harbor Freight gift card. Id. ¶ 48. The Court previously found that distinction to be reasonable. Class Members in the final group had substantially weaker claims because of the additional difficulty they would face in proving that they did in fact purchase a Class Product. See Dkt. No. 179, at 19. No class member objected to the distinctions, and no additional information requires revisiting that conclusion. Thus, the Court finds that the different forms of relief are justified and equitable.

     As discussed below, the Court finds the $3,000 requested on behalf of each of the class representatives to be reasonable in light of the amount of work they each performed on behalf of the Settlement Class. See infra Section III.E. The Court therefore concludes that this factor weighs in favor of final approval.

     Given the preceding analysis, the Court concludes that the Settlement meets the requirements of Rule 23(e)(2).

    C.     *The Proposed Settlement Class Meets the Notice Requirements Under Fed. R. Civ. P. 23(c)(2)(B)*

     Under Rule 23(c)(2)(B), "for any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2)(B) further states that the notice may be made by one of the following: United States mail, electronic means, or another type of appropriate means. Id. "The notice must

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1203 JVS (DFMx)) | Date | January 12, 2021 |
| Title | Will Kaupelis et al. v. Harbor Freight Tools USA, Inc. | | |

clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Id.

The Court previously approved the plan for sending notice to potential Class Members, contingent on the parties making changes to the Notice Forms and the timeline to submit claims, opt out, or object. See Dkt. No. 179 at 20–21. The final Notice reflected those changes. See Dkt. No. 178; Approval Mot. at 14. A total of 294,382 class members were contacted via email, and 146,854 class members received notice via mail. Id. An additional 47,089 Notices were mailed to class members who were initially emailed, but whose email addresses were invalid. Id. ¶ 12.

"Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Rodriguez v. West Publishing Corp., 563 F.3d 948, 962 (9th Cir. 2009) (internal quotation marks and citation omitted). "Settlement notices are supposed to present information about a proposed settlement neutrally, simply, and understandably[.]" Id. "That standard does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims." Lane v. Facebook, Inc., 696 F.3d 811, 826 (9th Cir. 2012). After including the changes required by the Court, the final notice implemented by RG/2 satisfies this standard. Accordingly, the Court finds that the notice to the Settlement Class was fair, adequate, and reasonable.

Given the foregoing analysis, the Court **GRANTS** Plaintiffs' motion seeking final approval of the Settlement.

    D.    *Attorneys' Fees*

"In a certified class action, the court may award reasonable attorney's fees and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 19-1203 JVS (DFMx))  Date  January 12, 2021

Title  Will Kaupelis et al. v. Harbor Freight Tools USA, Inc.

nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'" Staton, 327 F.3d at 963 (quoting Fed. R. Civ. P. 23(e)). "The reasonableness of any fee award must be considered against the backdrop of the 'American Rule,' which provides that courts generally are without discretion to award attorneys' fees to a prevailing plaintiff unless (1) fee-shifting is expressly authorized by the governing statute; (2) the opponents acted in bad faith or willfully violated a court order; or (3) 'the successful litigants have created a common fund for recovery or extended a substantial benefit to a class.'" In re Bluetooth, 654 F.3d at 941 (quoting Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 275 (1975) (Brennan, J., dissenting)). Both the first and the third prongs of the American Rule apply here: the CLRA provides for attorneys' fees as a matter of right, Cal. Civ. Code § 1780(e), and Class Counsel have succeeded in extending a substantial benefit to the class.

"In class action cases where the defendants provide monetary compensation to the plaintiffs, 'courts have discretion to employ either the lodestar method or the percentage-of-recovery method.'" In re Hyundai and Kia Fuel Economy Litigation, 926 F.3d 539, 570 (9th Cir. 2019) (en banc) (quoting In re Bluetooth, 654 F.3d at 942). Class Counsel argue that the lodestar method should be applied here because the settlement agreement calls for an uncapped claims-made settlement pursuant to a fee shifting statute. Fees. Mot. at 7-8. This is consistent with the practice of other courts in this circuit, and California courts. See Bruno v. Quten Research Inst., LLC, 2013 WL 990495, at *3-4 (C.D. Cal. Mar. 13, 2013); Brazil v. Dell Inc., 2012 WL 1144303, at *1 (N.D. Cal. Apr. 4, 2012); Parkinson v. Hyundai Motor Am., 796 F. Supp. 2d 1160 (C.D. Cal. 2010); Ketchum v. Moses, 24 Cal. 4th 1122, 1131-32 (2001). Accordingly, the Court begins by evaluating the fee request under the lodestar method before using the percentage method as a cross-check.

      *i.     Lodestar Method*

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." In re Bluetooth, 654 F.3d at 941 (citing Staton, 327 F.3d at 965). "Because of a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1203 JVS (DFMx)) | Date | January 12, 2021 |
| Title | Will Kaupelis et al. v. Harbor Freight Tools USA, Inc. | | |

'strong presumption that the lodestar is sufficient,' a multiplier is warranted only in 'rare and exceptional circumstances.'" Chambers v. Whirlpool Corp., 980 F.3d 645, 665 (9th Cir. 2020) (quoting Purdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 546-52 (2010)). Before applying a multiplier, "the district court must 'decide whether to enhance or reduce the lodestar figure based on an evaluation' of the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. 1975), 'that are not already subsumed in the initial lodestar calculation.'" Parsons v. Ryan, 949 F.3d 443, 467 (9th Cir. 2020) (quoting Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1119 & n.4 (9th Cir. 2000)). The factors listed in Kerr include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

526 F.3d at 70 (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)). "Moreover, a multiplier must be 'supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high.'" Id. (quoting Van Gerwen v. Guarantee Mutual Life Insurance Co., 214 F.3d 1041, 1045 (9th Cir. 2000)).

  Class Counsel submit declarations stating that the firm spent 1,246.3 hours on this case for a total lodestar of approximately $731,768.50. Smith Decl., Dkt. No. 183-4, ¶ 6. Hourly rates range from $700-$1,000 for partners, $315-$450 for associates, and $250-$300 for paralegals. See Fees Mot. at 9; Smith Decl., Dkt. No. 183-4, Ex. A. These rates are reasonable compared to other awards in California courts. See Zakskorn v. Am. Honda Motor Co., 2015 WL 3622990, *13-15 (E.D. Cal. Jun. 9, 2015) (approving fee request with hourly rates of up to $850 for partners and $450 for associates); In re Amgen Inc. Sec. Litig., 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (approving "a billing rate ranging from $750 to $985 per hour for partners, $500 to $800 per hour for 'of counsels'/senior counsel, and $300 to $725 per hour for other attorneys"). Class Counsel submitted detailed billing records documenting the time spent on this case, including

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-1203 JVS (DFMx))                                Date   January 12, 2021

Title   Will Kaupelis et al. v. Harbor Freight Tools USA, Inc.

motion practice, discovery, depositions, interviewing and retaining experts, preparing for trial, and work related to reaching and administering this settlement. See Fees. Mot. at 11-12; Smith Decl., Dkt. No. 183-4, ¶ 2, Ex. A. The Court has reviewed the records and finds that the documented hours are reasonable in light of the work performed on this case.

The requested $665,000 in attorneys' fees and costs includes $249,604.16 in litigation costs, leaving an attorneys' fees award of $415,395.84, which is less than the lodestar. The Plaintiffs argue that the Kerr factors support the presumption that the lodestar is reasonable. First, they argue that the litigation involved novel and complex research to successfully certify the class and withstand appeal. See Fees Mot. at 12-14; Smith Decl., Dkt. No. 183-4, ¶¶ 2(g), (h), (j). Next, they argue that the attorneys' experience in class action practice supports a finding that they provided quality representation. See Fees Mot. at 14; Smith Decl., Dkt. No. 183-4 Ex. K. Additionally, they argue that the settlement was a favorable result because it made between $8 million and $40 million available to class members, in addition to any attorneys' fees, costs, and service awards. See Fees Mot. at 14. Finally, they emphasize the risk of taking on this matter on a contingent basis, at times to the exclusion of other matters. See Fees Mot. at 14-15; Smith Decl., Dkt. No. 183-4, ¶ 8. The Court agrees that the Kerr factors support the presumption that the lodestar is reasonable.

Thus, the Court finds that the request for $415,395.84 in attorneys' fees is well below the lodestar, and thus reasonable to the Class Members under the lodestar method.

      *ii.*    *Percentage Method*

As a cross-check, courts routinely compare their initial fee calculation to a second method to "guard against an unreasonable result." See In re Bluetooth, 654 F.3d at 944. The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998). The Court has discretion in determining what constitutes the total value of the settlement in the denominator. See In re Online DVD-Rental Antitrust Litigation, 779 F.3d 934, 953 (9th Cir. 2015). The benchmark is also not rigid – it leaves room for the consideration the circumstances of the case. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047-50 (9th Cir. 2002). Relevant factors include the results achieved, the risk of the litigation, the skill required, and the contingent nature of the fee. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1203 JVS (DFMx)) | Date | January 12, 2021 |
| Title | Will Kaupelis et al. v. Harbor Freight Tools USA, Inc. | | |

    Plaintiffs argue that the denominator should include the theoretical value of the settlement based on the 800,000 class members. With claims ranging from $10 to $50, the potential payout to class members is between $8 million and $40 million. Plaintiffs argue that "in the Ninth Circuit, it is an abuse of discretion to base attorney's fees 'on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar.'" Perez v. Rash Curtis Assocs., No. 4:16-cv-03396-YGR, 2020 WL 1904533, at *6 (N.D. Cal. Apr. 17, 2020) (quoting Williams v. MGM-Pathe Commc'ns Co., 129 F.3d 1026, 1027 (9th Cir. 1997)). However, the cases cited by plaintiff also concern common funds, not uncapped settlements with fixed payouts for individual claims, where most Class Members will be receiving full compensation.

    Ultimately, 5,579 class members returned a chainsaw for a $50 benefit, for a definite value of $278,950. Another 20,201 class members returned claim forms. As the value of claims ranges from $10 to $50, the returned forms could generate an actual payout ranging from $202,010 to $1,010,050. Thus, the minimum actual value to Class Members was $480,960 and the maximum actual value was $1,289,000. Additionally, the $665,000 in attorneys' fees and costs may be included in the total settlement value because they were essential to making the entire action possible and are not otherwise accounted for. See In re Online DVD, 779 F.3d at 953 (approving calculation of attorneys' fees award as percentage of total settlement fund that included the payments for litigation costs and attorneys' fees).

    In sum, the actual value of the settlement is between $1,145,960 and $1,954,000. The requested $415,395.80 in attorneys' fees represents 36.3% of the minimum actual value and 21.3% of the maximum actual value. Including attorneys' fees and costs, the potential value of the settlement ranges from $8,665,000 to $40,665,000. The requested $415,395.80 in attorneys' fees represents 4.8% of the minimum potential value and 1% of the maximum potential value.

    The Court finds that it is appropriate to use the actual value of claims made as the denominator in the percentage calculation given the significant disparity between the potential and actual value of the settlement. If the submitted claims are all for the $50 maximum, a fee award of 21.3% of the total settlement value would compare favorably to the 25% benchmark. If the submitted claims are all for the $10 minimum, a fee award of 36.3% of the total settlement value would exceed the 25% benchmark. However, this would be a reasonable departure, especially in light of the fact that the potential value of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1203 JVS (DFMx)) | Date | January 12, 2021 |
| Title | Will Kaupelis et al. v. Harbor Freight Tools USA, Inc. | | |

the negotiated settlement was significantly higher and because of the inherent uncertainty involved in this calculation. See Williams, 129 F.3d at 1027 (allowing for adjustment of the percentage "to account for any unusual circumstances"). Thus, the Court finds that the percentage method cross-check does not call into question the reasonableness of the attorneys' fees calculated using the lodestar method.

Accordingly, the Court **GRANTS** Class Counsel $415,395.80 in attorneys' fees.

*E.    Service Payments*

Class Counsel also seek $3,000 service payments for each of the named plaintiffs. Courts have discretion to issue incentive awards to class representatives. Rodriguez, 563 F.3d at 958–59. The awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Id. Courts evaluate incentive awards relative to named plaintiff[s'] efforts, considering "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." Staton, 327 F.3d at 977 (alterations in original) (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)). Courts also compare the incentive awards to the total settlement by looking at "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." In re Online DVD, 779 F.3d at 947 (9th Cir. 2015) (quoting Staton, 327 F.3d at 977).

In support of their request, Plaintiffs present documentation of the time and effort spent by the named class representatives. See Kaupelis Decl., Dkt. No. 183-2; Ortega Decl., Dkt. No. 183-3. Both Plaintiffs spent time researching attorneys, class actions, responding to document requests, and reviewing the progress of the case. See Kaupelis Decl. ¶ 7; Ortega Decl. ¶7. Both named plaintiffs were also deposed, and spent additional time preparing for, traveling to, and reviewing the transcript of their depositions.
See Kaupelis Decl. ¶ 6; Ortega Decl. ¶6. Kaupelis estimates that he spent a total of 24-25 hours working on the case, see Kaupelis Decl. ¶ 5, while Ortega estimates that he spent approximately 23 hours. See Ortega Decl. ¶ 5. For Kaupelis and Ortega, a service award of $3,000 would constitute an hourly rate of compensation between $120 and $130. In

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1203 JVS (DFMx)) | Date | January 12, 2021 |
| Title | Will Kaupelis et al. v. Harbor Freight Tools USA, Inc. | | |

light of the effort expended by the Plaintiffs, this is within the range of service payments that this Court has previously found to be reasonable. See Alvarez v. Sirius XM Radio, Inc., 2021 WL 1234878, at *12-*13 (C.D. Cal. Feb. 8, 2021) (finding $5,000 payments representing hourly rates between $250 to $417 to be excessive); Palmer v. Pier 1 Imports, 2018 WL 8367495, at *6 (C.D. Cal. July 23, 2018) (reducing $7,500 service payment that would have provided for an hourly rate of $375).

Awarding Kaupelis and Ortega an incentive award of $3,000 each would total $6,000. While this is 50 times the maximum recovery of other class members, it is reasonable in light of the total value of the settlement and the effort expended by Kaupelis and Ortega. In comparison to the total settlement, this represents no more than 0.069% of the potential value of the settlement made available to consumers and no more than 0.53% of the actual value of the settlement. This is within the range of what other courts have found reasonable. See In re Online DVD, 779 F.3d at 947-948 (approving incentive payment of $5,000 where it totaled 0.17% of the settlement fund); Staton, 327 F.3d at 976-77 (rejecting incentive awards of $30,000 totaling 6% of the settlement fund). Moreover, the significance of any disparity between each Class Member's recovery and the incentive awards is substantially diminished where most Class Members will be receiving full compensation.

  *F.*   *Litigation Expenses*

Class Counsel further seek reimbursement of $249,604.16 in litigation expenses. Fees Mot. at 16-17. "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." In re Omnivision Techs. Inc., 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008). Plaintiffs describe the request as including "typical litigation costs, such as: videographer and court reporter fees for deposition, expert witness fees, court fees, travel, and other customary litigation expenses." Fees Mot. at 16-17. At the Court's request, the Plaintiffs submitted supplemental documentation of the expenses attributed to Applied Marketing Sciences. See Dkt. No. 193. The Court has reviewed the details of the litigation expenses submitted by Plaintiffs and finds them to be reasonable in light of the work necessary to bring this action. See Smith Decl. ¶ 9, Ex. B.

The Court therefore **GRANTS** the request for $249,604.20 in litigation costs and expenses.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1203 JVS (DFMx)) | Date | January 12, 2021 |
| Title | Will Kaupelis et al. v. Harbor Freight Tools USA, Inc. | | |

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** final approval of the Settlement, **GRANTS** Plaintiffs $415,395.80 in attorneys' fees, **GRANTS** Plaintiffs $249,604.20 in litigation costs and expenses, and **GRANTS** service payments of $3,000 to each of the named Plaintiffs. The Court **VACATES** the hearing scheduled for January 18, 2022.

**IT IS SO ORDERED.**

|  |  : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |